**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

YAMIN MOUSSELLI,                        )
                                        )
    Plaintiff,                       )
                                        )
v.                                      )
                                        )      **No. 5:25-cv-00071-BO-KS**
                                        )
EQUIFAX INFORMATION SERVICES            )
LLC,                                    )
                                        )
    Defendant.                       )

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO EQUIFAX'S MOTION FOR SUMMARY JUDGMENT

#### INTRODUCTION

Section 1681i requires a consumer reporting agency to conduct a reasonable reinvestigation "to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). That statutory language matters. Congress did not require a consumer reporting agency merely to forward a dispute to the same furnisher that supplied the disputed information. Congress required a reinvestigation to determine whether the disputed information is inaccurate.

Equifax's own Rule 30(b)(6) witness admitted ███████████████. He testified that Equifax "█████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████" That admission defeats Equifax's motion.

Unable to defend its own dispute process, Equifax attempts to recast this case as a non-cognizable "legal dispute." But this case does not require Equifax to resolve a bankruptcy discharge, interpret an ambiguous court order, or adjudicate unsettled contract doctrine. Mr. Mousselli told Equifax that he never signed a lease, never moved in, did not owe Metro

1

University City or Hunter Warfield anything, and supplied the rental application showing no charges. Equifax nevertheless continued to verify a collection account whose factual basis and fluctuating balances it could not explain.

That is not summary judgment for Equifax. At minimum, a jury could find Equifax failed to conduct a reasonable reinvestigation. Indeed, Plaintiff's own motion explains why summary judgment should enter in Plaintiff's favor on liability under § 1681i. Equifax's motion should be denied.

### FACTUAL BACKGROUND

Mr. Mousselli applied online for an apartment at Metro University City while looking for housing. He did not sign a lease, did not move in, and did not agree to pay rent or other charges. The rental application contained blank fee fields and no dollar amounts establishing the collection balance later reported by Hunter Warfield. Plaintiff's Statement of Material Facts, ECF Nos. 88, 93, 94-1 (collectively, "PSMF") ¶¶ 1–5.

After Metro University City sent a purported $300-plus account to Hunter Warfield, Hunter Warfield began reporting a collection account to Equifax. *Id.* ¶ 5. Mr. Mousselli disputed that account with Equifax three times. *Id.* ¶ 6.

In his first dispute, Mr. Mousselli told Equifax that the Hunter Warfield account was wrong, that he merely applied to Metro University City, that he did not live there, that he owed no money to Metro University City or Hunter Warfield, and that the application showed no fees. *Id.* ¶¶ 9–10.

Equifax's Rule 30(b)(6) witness testified that everything Equifax did in response to the first dispute was to receive and image the dispute, review it, submit it into the system, send it to

Hunter Warfield, give Hunter Warfield an opportunity to verify the data, receive Hunter Warfield's response, and send dispute results to Mr. Mousselli. *Id.* ¶ 11.

Equifax admitted ███████████████████████████████████████ ███████ *Id.* ¶ 12. ███████████████████████████████████████████████ . PMSF ¶ 13. ████████████████████████████████ *Id.* ¶ 14. █████████████████ ███████████████████████████████████ *Id.* ¶¶ 15–16. ████████████ ████████████████████████████ *Id.* ¶ 17.

Most importantly, Equifax admitted ████████████████████████████ ████████████████████ Its corporate representative testified: ████████████ ██████████████████████████████████████████████ ." *Id.* ¶ 45

(emphasis added).



**ARGUMENT**

**1.**      **Equifax's Motion Fails Because Its Own Corporate Testimony Establishes That It Did Not Perform the Reinvestigation Required by § 1681i.**

     **a.**      **Section 1681i requires a reinvestigation to determine whether disputed information is inaccurate.**

The statutory command is straightforward. When a consumer disputes information in his file, the consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A).

     **b.**      **Equifax admitted accuracy was not determined and was not "in play."**

Equifax's Rule 30(b)(6) witness admitted that Equifax ████████████████ ███████████ He testified that ██████████████████████████████████████ ████ " PSMF ¶ 49. He also testified that █████████████████████████████ ██████████████████████████████████ " *Id.* ¶ 45.



3

That testimony is not merely evidence of an unreasonable reinvestigation. It is evidence that Equifax did not perform the statutory function at all.

Equifax's entire defense depends on substituting furnisher verification for CRA reinvestigation. But § 1681i imposes a duty on the consumer reporting agency. Equifax cannot avoid that duty by forwarding the dispute back to Hunter Warfield—the same furnisher whose reporting Mr. Mousselli disputed.

### c. Merely forwarding a dispute through ACDV does not satisfy § 1681i.

Equifax repeatedly invokes the ACDV process as if use of an industry mechanism ends the inquiry. It does not.

A consumer reporting agency's duty under § 1681i "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). *See also Centuori v. Experian Info. Solutions, Inc.*, 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("The caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information. The grave responsibility imposed by the FCRA must consist of something more than merely parroting information received from other sources.") (quoting *Soghomonian v. United States*, 278 F.Supp.2d 1151, 1156 (E.D. Cal. 2003), *citing Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997)). A reinvestigation that merely shifts the burden back to the consumer and furnisher cannot satisfy the statute. *Cushman*, 115 F.3d at 225.

The Fourth Circuit has recognized that the FCRA imposes distinct duties on furnishers and CRAs. Those duties differ, but they do not eliminate the CRA's independent obligation. Equifax cannot convert the furnisher's response into Equifax's own determination of accuracy.

That is particularly true where the furnisher was the source of the disputed information in the first place.

Nor does "industry standard" mean statutory compliance. The credit reporting industry does not define the FCRA. Congress did. And Congress required a reinvestigation to determine whether disputed information is inaccurate.

> **d.      Equifax's own evidence shows no substantive investigation directed toward determining accuracy.**

Equifax did not determine whether Mr. Mousselli owed Hunter Warfield. It did not determine whether he owed Metro University City. It did not determine whether he owed anyone. It could not identify where the balance came from. It had no information explaining how the balance arose. It did not verify the balance or amount past due.

That is not a reasonable reinvestigation as a matter of law for Equifax. At minimum, it creates a jury question. *See Childers v. Rent-A-Ctr. E., Inc.*, 751 F. Supp. 3d 650, 664 (E.D. La. 2024) (unless beyond dispute, the reasonableness of a credit reporting agency's reinvestigation under § 1681i is generally a question of fact for the jury) (internal citations omitted); *see also Soghomonian*, 278 F. Supp. 2d at 1156 ("[T]he reasonableness of a credit reporting agency's procedures under the FCRA and whether the agency actually followed these procedures "'will be jury questions in the overwhelming majority of cases.'") (citing *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995)). A jury could readily find that a company does not reasonably reinvestigate a disputed debt when it admittedly never determines whether the debt exists, cannot explain the balance, and merely adopts the furnisher's response.

**2.** **This Case Presents a Factual Nonexistence Dispute, Not a Non-Cognizable Legal Dispute.**

    **a.** **Mr. Mousselli disputed that any debt existed.**

Equifax's threshold argument is that Mr. Mousselli's claim is not cognizable because it supposedly required Equifax to resolve a legal dispute. That mischaracterizes the case.

Mr. Mousselli did not ask Equifax to resolve a bankruptcy discharge, interpret a court order, or decide an unsettled question of law. He told Equifax that he never signed a lease, never moved into the apartment, owed Metro University City nothing, owed Hunter Warfield nothing, and that the application showed no charges. He supplied Equifax with the rental application. *See Kanani v. Experian Info. Solutions, Inc.*, 2024 U.S. Dist. LEXIS 140826, at *9-10 (M.D. Fla. Aug. 8, 2024) (denying motion to dismiss where alleged credit report inaccuracy was objectively verifiable because it presented a "straightforward application of law to facts"—either plaintiffs entered into a walkaway agreement with the landlord discharging the debt, or they did not);

This is a factual nonexistence dispute. It asks whether any factual basis supported reporting a collection debt against Mr. Mousselli.

There can be no "collateral attack" on a debt where no debt existed.

    **b.** **Equifax's "legal dispute" framing is a litigation position, not what Equifax determined during the dispute process.**

Equifax's current legal-dispute argument is also inconsistent with what actually happened. Equifax did not determine during the dispute process that Mr. Mousselli had presented a non-cognizable legal dispute. Equifax did not determine that the issue was not readily and objectively verifiable. Equifax did not determine that legal interpretation prevented it from acting.

6

Instead, Equifax processed the disputes in its ordinary fashion, sent them to Hunter Warfield, and accepted Hunter Warfield's response.

Equifax cannot now escape liability by inventing a *post hoc* litigation rationale it never applied during the reinvestigation. *See United States ex rel. Dickson v. Fid. and Deposit Co.*, 67 F.4th 182, 192 (4th Cir. 2023) (equitable "estoppel does not require unjust or fraudulent conduct by the estopped party, only that 'the person estopped, by his statements or conduct, misled another to his prejudice.'") (internal citation omitted).

### c. *Roberts* supports Plaintiff because this is a "debt never occurred" case.

Equifax relies on *Roberts* and related cases to argue that some disputes are not cognizable under the FCRA unless they are objectively and readily verifiable. But *Roberts* does not help Equifax in the way Equifax claims. *Roberts* recognized that disputes that an alleged debt "never occurred" may be objectively and readily verifiable.

That is this case.

Mr. Mousselli's dispute was that the Hunter Warfield debt did not exist. He did not sign a lease. He did not move in. He owed no money. The application provided no stated fee obligation supporting the collection account. Equifax could not identify the factual basis for the balance.

This is not an abstract legal challenge. It is a dispute over whether there was any factual basis for reporting a collection debt at all.

### d. <u>*Chijoke-Uche and cases Equifax city* are distinguishable.</u>

Equifax's legal-dispute cases are materially different. For example, in *Chijioke-Uche*, the question required analysis regarding the performance of the parties' duties under the contract and legality of a vehicle repossession. 2021 U.S. Dist. LEXIS 95614, *8 (E.D. Pa. May 20, 2021). In

7

*Chijioke-Uche*, the plaintiff's theory required contract interpretation and legal analysis regarding secured transactions.

This case is different. Mr. Mousselli does not ask Equifax to interpret a contract or adjudicate a vehicle repossession. Unlike *Chijioke-Uche*, where disputed contractual performance required interpretation of populated contract terms, Mousselli does not ask Equifax to interpret anything — the fee provisions in the rental application were blank, meaning no interpretation of contract language could ever yield the amount Equifax repeatedly verified. Instead, Mr. Mousselli asks why Equifax repeatedly verified a collection account where the documents provided to Equifax showed no lease, no move-in, no stated charges, and no factual basis for the amount reported.

Equifax does not need to *interpret* the rental application — it only needs to *read* it. A blank fee provision requires no legal sophistication to understand. It speaks for itself. Many courts have held whether a plaintiff owes a debt arising from or (purportedly) related to a contract are nonetheless readily and objectively verifiable. *See, e.g., Kanani*, 2024 U.S. Dist. LEXIS 140826 (whether plaintiffs owed any debt was objectively and readily verifiable); *Brutus v. Yes Companies Fred, LLC*, 754 F.Supp.3d 1161, 1164–65 (N.D. Fla. Oct. 16, 2024) (in connection with lease agreement, whether "amount reported against Plaintiff as a debt was accurate" was objectively and readily verifiable); *Paulino v. W. Funding II Inc.*, 737 F.Supp.3d 1338, 1347 (S.D. Fla. 2024) (whether plaintiff "execute[d] the Disputed Loan" was objectively and readily verifiable). The rental application's existence is a red herring if its terms do not substantiate the alleged debt.

Equifax's attempt to transform "there was no debt" into "resolve a legal contract dispute" should be rejected.

**3.** **A Reasonable Jury Could Find Equifax's Dispute Process Unreasonable.**

Even if the Court does not grant Plaintiff's motion for partial summary judgment, Equifax's motion must be denied because substantial evidence supports a finding that Equifax failed to conduct a reasonable reinvestigation.

**a.** **Equifax repeatedly claimed to have 'verified' balances it could not explain.**

This case is not just about whether Equifax used ACDVs. It is about what Equifax did after receiving specific disputes and documents.

The reported balance changed. The account began around $304, then reflected later balances including $312, $313, and $315. Yet Equifax could not explain where the original balance came from or how the balance came to be. Equifax itself did not verify the balance or amount supposedly past due.

A jury could reasonably conclude that a CRA does not reasonably verify a debt when it cannot explain the debt's factual basis or the changing balances it continues to report.

**b.** **Equifax ignored evidence undermining the existence and amount of the debt.**

Mr. Mousselli gave Equifax the critical information: he had applied for an apartment, never signed a lease, never moved in, owed no money, and the application contained no charges supporting the alleged collection balance.

Equifax's response was not to determine whether the disputed information was inaccurate. Equifax's response was to send the dispute to Hunter Warfield and accept the response.

That is precisely the type of furnisher parroting courts reject.

### c. Equifax's policies do not establish reasonableness.

Equifax relies on its policies, including its Independent Dispute Investigation Update Documents Standard and its ACDV process. But Equifax's internal policies are not the law. The existence of a policy does not establish that the policy complies with the FCRA.

Indeed, Equifax's policy evidence hurts Equifax. If Equifax's policies led it to verify Mr. Mousselli's account without determining whether it was accurate, then a jury could find those policies unreasonable. A company cannot immunize itself from liability by showing that it consistently follows a deficient policy.

### d. ACDV use is not per se reasonable.

Equifax's motion repeatedly invokes cases where courts found ACDV use reasonable. But those cases do not create a categorical rule. Courts routinely recognize that ACDV forwarding is not always enough, especially where the consumer provides information undermining the furnisher's reporting. *See, e.g., Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021) (vacating summary judgment in favor of reporting agency, finding that its reliance on the ACDV process without further investigation was potentially negligent).

The reasonableness of a reinvestigation depends on the circumstances. *See Cushman*, 115 F.3d at 225-26 (the reasonableness of an investigation depends on factors such as whether the reporting agency had reason to believe the furnisher's information was unreliable, the cost of verifying the information, and the potential harm to the consumer from inaccurate reporting).

Here, the circumstances include:

- a consumer who disputed the existence of the debt;
- documents showing no lease, no move-in, and no stated charges;
- unexplained and fluctuating balances;

- a furnisher whose response Equifax simply accepted;

- Equifax's admission that it never determined accuracy or inaccuracy.

Those facts preclude summary judgment for Equifax.

**4.      Equifax Is Not Entitled to Summary Judgment on Willfulness.**

Equifax also seeks summary judgment on willfulness. That request should be denied.

Plaintiff does not need to prove willfulness as a matter of law at this stage. Plaintiff need only show that a reasonable jury could find Equifax knowingly or recklessly violated the FCRA.

A reasonable jury could do so.

Equifax's Rule 30(b)(6) witness testified that ███████████████████ ████████████████████████████████████████████ That is not an isolated mistake. It is a policy-level admission. Equifax's position is that the determination of accuracy "wasn't in play" as far as the reinvestigation was concerned.

A jury could find reckless disregard where a consumer reporting agency adopts a dispute process that omits the very statutory task Congress required.

Equifax's reliance on *Safeco* does not change the result. *Safeco* does not immunize a CRA that disregards statutory text. Section 1681i expressly requires a reinvestigation to determine whether disputed information is inaccurate. Equifax's own witness admitted ██████ ████████  At minimum, that creates a jury question on willfulness.

**5.      Equifax Is Not Entitled to Summary Judgment on Plaintiff's § 1681e(b) Claim.**

Equifax next argues that Plaintiff's § 1681e(b) claim fails because Plaintiff supposedly lacks admissible evidence of the contents of any Equifax consumer report.

That argument fails at summary judgment.

At this stage, evidence need not be presented in trial-admissible form if it can be reduced to admissible form at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (the nonmoving party is not required to produce evidence in a form that would be admissible at trial in order to avoid summary judgment). Plaintiff has evidence from which a reasonable jury could determine that Equifax reported the Hunter Warfield collection account. That evidence includes Equifax's own dispute results, credit file disclosures, inquiry/reporting evidence, the Capital One denial evidence, and testimony concerning the account's presence on Plaintiff's Equifax credit file.

Equifax does not seriously dispute that the Hunter Warfield account appeared in Plaintiff's Equifax file. Equifax's entire defense assumes it did. Nor does Equifax deny that it maintained and processed that account information. The evidence is sufficient to permit a jury to determine that Equifax reported inaccurate information.

Equifax's hearsay objection to the Capital One denial letter is not dispositive. The letter may be admissible for non-hearsay purposes, through a proper custodian, through business-record foundation, or in conjunction with testimony and other evidence. In any event, Plaintiff's § 1681e(b) claim is not defeated merely because Equifax disputes one item of proof.

At minimum, factual disputes preclude summary judgment.

### 6.      The North Carolina UDTPA Claim Survives.

Equifax's argument on Plaintiff's North Carolina Unfair and Deceptive Trade Practices Act claim is derivative. Equifax argues the state-law claim fails because the FCRA claims fail. Because Plaintiff's FCRA claims survive, Equifax's derivative argument fails as well.

**7.** **Plaintiff's Motion for Partial Summary Judgment Should Be Granted; at Minimum, Equifax's Motion Should Be Denied.**

Plaintiff moved for partial summary judgment on Equifax's liability under § 1681i. The evidence supporting that motion is also fatal to Equifax's motion.

Equifax received three disputes. Equifax had the rental application. Equifax knew Plaintiff claimed he never signed a lease, never moved in, and owed no money. Equifax admitted it did not determine whether Plaintiff owed Hunter Warfield, Metro University City, or anyone else. Equifax could not explain the balance. Equifax did not verify the amount past due. Equifax admitted it never determined whether the disputed information was accurate or inaccurate.

Those facts establish liability under § 1681i or, at minimum, require trial.

Equifax's motion asks the Court to hold, as a matter of law, that a CRA may comply with § 1681i without determining whether disputed information is inaccurate. That is not the law.

**CONCLUSION**

Equifax's motion should be denied.

Section 1681i required Equifax to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate. Equifax's corporate representative admitted Equifax did not determine whether the information was accurate or inaccurate. Instead, Equifax forwarded Mr. Mousselli's disputes to Hunter Warfield and accepted the furnisher's response, despite documents undermining the debt and despite unexplained, fluctuating balances.

This case is not a non-cognizable legal dispute. It is a factual nonexistence dispute about whether any debt supported the collection account Equifax continued to report. Equifax's own evidence, at minimum, creates triable issues of fact on inaccuracy, reasonableness, willfulness, and reporting.

13

For these reasons, Plaintiff respectfully requests that the Court deny Equifax's Motion for

Summary Judgment and grant all other relief that is fair and equitable.

*Respectfully submitted,*

____/s/ Rashad Blossom_____
Rashad Blossom NC Bar No. 45621
Blossom Law PLLC
126 N. McDowell St., 2nd Floor
Charlotte, NC 28204
Telephone: (704) 256-7766
Fax: (704) 486-5952
E-mail: rblossom@blossomlaw.com
*Attorney for Plaintiff Yamin Mousselli*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served upon all counsel of record

via CM/ECF.

Date:   May 23, 2026

/s/ Rashad Blossom
Rashad Blossom

14