# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

| | | |
|---|---|---|
| YAMIN MOUSSELLI., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:25-cv-00071-BO-KS |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## STATEMENT OF MATERIAL FACTS

Plaintiff submits the following responses to Defendant's Statement of Material Facts, and

support hereof Plaintiff incorporates Plaintiff's Statement of Material Facts, ECF Nos. 88, 93, 94-

1 (collectively, "PSMF"):

1.  Undisputed that Equifax is a consumer reporting agency that creates and maintains

credit files on consumers in the United States.

2.  Undisputed that Equifax gathers information about consumers from various

sources.

3.  Undisputed for purposes of this motion only that Equifax's credit files are used to

prepare consumer reports for subscribers.

4.  Disputed. Equifax's own corporate representative admitted that Equifax ███

█████████████████████████████████████████████████████████████████ .

PSMF ¶¶ 44–45. Equifax █████████████████████████████████████

██████████████████████████████████ . PSMF ¶¶ 15–16. ██████████

██████████████████████████████████████████████████████████████

█████████████ . PSMF ¶ 42.

5. Undisputed that Equifax opened dispute cases tracked through the CCMS system.

6. Undisputed that the CCMS record reflects the steps taken in response to a dispute.

7. Disputed. Equifax agent Andres Hernandez admitted during the second dispute call that he did not have access to the documents Mr. Mousselli had submitted with his first dispute. PSMF ¶ 21. Equifax . PSMF ¶ 44.

8. Disputed. Equifax . PSMF ¶¶ 35, 40.

9. Undisputed that Equifax maintains an Independent Dispute Investigation Update Documents Standard. Disputed to the extent this paragraph implies that Equifax's application of that policy to Mr. Mousselli was reasonable under the FCRA or that the policy itself satisfies § 1681i. The FCRA does not permit Equifax to substitute compliance with its internal policies for its statutory obligation to determine whether disputed information is inaccurate. PSMF ¶ 43.

10. Undisputed that Equifax maintains policies permitting updates or deletions. Disputed in that this fact is immaterial to whether Equifax's dispute process with respect to Mr. Mousselli was reasonable.

11. Undisputed that Equifax's policy is to send ACDVs to furnishers. Disputed to the extent this paragraph implies that sending an ACDV satisfies Equifax's § 1681i obligation. Merely forwarding a dispute to the same furnisher whose reporting is challenged does not constitute a reasonable reinvestigation. PSMF ¶ 36; *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

12. Disputed. The characterization that the "data furnisher is in the best position to investigate a dispute" does not define or limit Equifax's independent obligation under § 1681i.

2

Equifax testified that ███████████████████████████████████. PSMF ¶ 51. Equifax's ████████████████████████████████████████████████████████." PSMF ¶ 5.

13.     Undisputed that Equifax generally communicates with data furnishers through the ACDV process.

14.     Undisputed that the ACDV/E-OSCAR process is an industry standard. Disputed to the extent this paragraph implies that use of an industry standard process categorically satisfies § 1681i. Compliance with industry norms does not define the FCRA's requirements, which Congress, not the credit reporting industry, established.

15.     Disputed. Equifax's policy of accepting a furnisher's ACDV response without independent determination of accuracy is not consistent with § 1681i where, as here, the consumer has provided documents showing no factual basis for the reported debt. Equifax testified that ██ ██████████████████████████████████████████████████████████████ ██████████████████████████████. PSMF ¶ 41 (Stephens Depo. 43:4–19).

16.     Disputed.

17.     Disputed.

18.     Undisputed.

19.     Disputed as incomplete and misleading. Mr. Mousselli's November 2022 dispute stated far more than the selective quotation in this paragraph reflects. He told Equifax that he merely applied to Metro University City, decided not to live there, owed no fees to Metro University City or Hunter Warfield, and attached the rental application directing Equifax's attention to the fee section, which was blank. PSMF ¶ 10.

20.     Undisputed that Mr. Mousselli enclosed the rental application and directed Equifax to the section listing fees with blank spaces.

21. Undisputed.

22. Undisputed.

23. Undisputed.

24. Undisputed that the spaces next to each listed fee are blank. This fact supports Plaintiff: the blank fee fields meant there was no stated dollar amount in the application documents that could substantiate the collection balance Equifax repeatedly verified.

25. Disputed in that Equifax's agent did not read the rental agreement.

26. Disputed to the extent this paragraph implies that Equifax's internal policy excuses its failure to conduct a reasonable reinvestigation. The Independent Dispute Investigation Update Documents Standard may define when Equifax will make an immediate update without further investigation; it does not define the scope of Equifax's obligation to conduct a substantive reinvestigation under § 1681i. Even where the policy does not require an immediate update, § 1681i still required Equifax to determine whether the disputed information was inaccurate. PSMF ¶ 43.

27. Undisputed that the dispute package included the rental application. Disputed to the extent this implies Equifax had no obligation to consider the documents' contents during reinvestigation. The documents were submitted precisely to show that no fee obligation existed.

28. Undisputed that Mr. Singh did not use the rental application to remove the Hunter Warfield account without further reinvestigation. Disputed to the extent this implies Equifax satisfied § 1681i by ███████████████████████████████████████████. PSMF ¶¶ 12–14, 44–45.

29. Undisputed that Mr. Singh sent an ACDV to Hunter Warfield.

30. Undisputed that Hunter Warfield responded on November 21, 2022, verifying the account as an unpaid collection in the amount of $308. Disputed to the extent this implies that

4

██████████████████████████████████████████████████████

████████████ . PSMF ¶¶ 51–53.

31.     Disputed. The fact that Equifax's policies and procedures "did not require it to take any specific action" after receiving Hunter Warfield's ACDV response does not establish that Equifax's reinvestigation was reasonable. Equifax's own policies are not the measure of § 1681i compliance. An internal policy that ████████████████████████████████████ ███████████████████████████ . PSMF ¶ 56 (Stephens Depo. 62:2–11).

32.     Undisputed that Equifax sent results on November 21, 2022. Disputed that Equifax conducted a reinvestigation.

33.     Undisputed.

34.     Undisputed.

35.     Undisputed.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed.

39.     Undisputed.

40.     Undisputed that Mr. Hernandez sent an ACDV to Hunter Warfield as a result of the second dispute. Notably, Equifax admitted it did nothing procedurally different for the second dispute than it did for the first. PSMF ¶ 22.

41.     Undisputed that Hunter Warfield responded on February 18, 2023, verifying the account as an unpaid collection — this time in the amount of $313, which differed from the amount previously verified. Disputed to the extent this implies the verification was reliable. Equifax ████

██████████████████████████████████████████████████████

████ . PSMF ¶¶ 15–16, 33.

Case 5:25-cv-00071-BO-KS     Document 104     Filed 05/24/26     Page 5 of 12

42.  Disputed for the reasons stated in response to paragraph 31 above. The fact that Equifax's internal policies "did not require it to take any specific action" does not establish reasonable compliance with § 1681i. PSMF ¶ 43.

43.  Undisputed that Equifax sent Plaintiff a reinvestigation results letter. Disputed that Equifax conducted a reinvestigation.

44.  Undisputed that Plaintiff received the February 19, 2023 reinvestigation results letter.

45.  Undisputed that Equifax received Mr. Mousselli's third dispute by telephone on or around March 6, 2023.

46.  Undisputed that the third dispute was received by Eying Beni.

47.  Undisputed that Plaintiff told Equifax during the third dispute that the Hunter Warfield account was invalid and should be deleted.

48.  Undisputed that Plaintiff told Equifax he did not owe Metro University City anything.

49.  Undisputed that Ms. Beni sent an ACDV to Hunter Warfield as a result of the third dispute.

50.  Undisputed that Hunter Warfield responded on March 7, 2023, verifying the account as an unpaid collection in the amount of $315 — a third different balance from the amounts previously reported. Disputed to the extent this implies the verification was reliable or that Equifax discharged its § 1681i duty. The fluctuating and unexplained balances are themselves evidence that Equifax ███████████████████████████████████████. PSMF ¶¶ 15–17, 25, 31.

51.  Disputed for the reasons stated in response to paragraphs 31 and 42 above. Equifax's policies ██████████████████████████████, but § 1681i did. PSMF ¶ 45.

6

52. Undisputed that Equifax sent Plaintiff a reinvestigation results letter. Disputed that Equifax conducted a reinvestigation.

53. Undisputed.

54. Undisputed that Plaintiff filed suit against Hunter Warfield in North Carolina state court on May 1, 2023. This fact is immaterial to whether Equifax's prior reinvestigations — conducted in November 2022, February 2023, and March 2023 — satisfied § 1681i.

55. Undisputed.

56. Disputed.

57. Disputed.

58. Disputed to the extent this paragraph implies that Equifax's furnisher onboarding or reliability assessment constitutes or substitutes for reasonable reinvestigation under § 1681i. Equifax's belief in Hunter Warfield's reliability is based ███████████████████████ ███████████████████████████████████. PSMF ¶ 53.

59. Disputed.

60. Disputed.

61. Undisputed that the Hunter Warfield subscriber agreement with Equifax. Disputed to the extent this implies that Hunter Warfield's contractual obligations discharge Equifax's independent statutory duty under § 1681i. Section 1681i imposes duties on Equifax as the consumer reporting agency, and those duties cannot be delegated to or discharged by a furnisher agreement.

62. Disputed.

63. Undisputed that the Metro 2 data format is governed by the CRRG. Disputed to the extent this implies that compliance with an industry data format standard equals compliance with § 1681i.

7

64. Disputed in that this fact is immaterial to whether Equifax's reinvestigation was reasonable, as it speaks to furnisher obligations, not Equifax's reinvestigation process.

65. Undisputed that Plaintiff identified Capital One and Citibank as recipients of Equifax reports containing inaccurate information about him.

66. Undisputed that Plaintiff claims a credit denial from Capital One. This fact does not establish the full extent of harm and does not foreclose evidence of other harms.

67. Disputed. Plaintiff objected to production of consumer reports on proper grounds, and his objections were not withdrawn. The failure to produce copies of consumer reports in discovery does not establish that no reports were issued. Equifax itself states it does not keep copies of reports it prepares for third parties. *See* ¶ 71, below.

68. Undisputed.

69. Undisputed.

70. Undisputed.

71. Disputed.

**Additional Material Facts as to Which Plaintiff Contends There Is a Genuine Dispute**

72. Equifax never ███████████████████████████████████████████
████████████████████████████████████████████. PSMF ¶ 44.

73. To Equifax, ███████████████████████████████████████
██████████████████████████ PSMF ¶.

74. Equifax's corporate representative testified that ███████████████████████
████████████████" PSMF ¶ 49.

75. When asked whether Equifax believes an investigation requires a determination of whether the disputed information is inaccurate, Equifax answered ██. PSMF ¶ 43.

76. Since Mr. Mousselli's first dispute, Equifax's reinvestigation process ███████ ████████████████████████████████████████. PSMF ¶ 56.

77. Equifax ████████████████████████████████████████████ ███████. PSMF ¶ 12.

78. Equifax ████████████████████████████████████████████ ████████████. PSMF ¶ 13.

79. Equifax ███████████████████████████████████████████████. PSMF ¶ 14.

80. Equifax ████████████████████████████████████████████ ███████. PSMF ¶ 15.

81. Equifax ██████████████████████████████████████. PSMF ¶ 16.

82. Equifax itself ████████████████████████████. PSMF ¶ 17.

83. The reported balance changed across the three reinvestigations — from $308 to $312 or $313 to $315 — and Equifax ███████████████████. PSMF ¶¶ 25, 31.

84. Equifax agent Andres Hernandez told Mr. Mousselli during the second dispute that he did not have access to the documents Mr. Mousselli had submitted with his first written dispute. PSMF ¶ 21.

85. Hernandez also told Mr. Mousselli that, depending on what Hunter Warfield reports, Equifax's system "automatically believes Hunter Warfield" over Mr. Mousselli and does not verify the accuracy of Hunter Warfield's statements. PSMF ¶ 21.

86. Equifax dispute agents are not permitted to ███████████████████████ ██████████████████████████████████████████████████. PSMF ¶ 37.

87. Equifax ███████████████████████████████████████████ ███████████████████████████████████████████████████. PSMF ¶ 42.

88. Equifax ███████████████████████████████████████ ████████████████. PSMF ¶ 51.

89. Equifax ████████████████████████████████████████ ████████████████████████████████████████████████████████. PSMF ¶ 52.

90. Equifax's ███████████████████████████████████ ████████████████████████████████████████████████ ████ PSMF ¶ 53.

91. No one at Equifax ever ████████████████████████ █████████████████████████████████████████████████ ████████████████████████████. PSMF ¶ 47.

92. Equifax ████████████████████████████████████ ████████████. PSMF ¶ 39.

93. During the third dispute call, Equifax agent Eying Beni told Mr. Mousselli that the account was invalid, did not belong to him, and had a balance of zero — representations directly contrary to the written dispute results Equifax issued to Mr. Mousselli the very next day, which stated "WE VERIFIED THAT THIS ITEM BELONGS TO YOU" and reflected a balance of $315. PSMF ¶¶ 29–31.



      /s/ Rashad Blossom
Rashad Blossom Bar Number: 45621
Attorney for Plaintiff
Blossom Law PLLC

10

126 N. McDowell St., 2nd Floor
Charlotte, NC 28204
Telephone: (704) 256-7766
Fax: (704) 486-5952
E-mail: rblossom@blossomlaw.com

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 23, 2026, the foregoing was served via email on counsel of record via CM/ECF.

/s/ Rashad Blossom
Rashad Blossom

12