| | |
|---|---|
| YAMIN MOUSSELLI,<br><br>   Plaintiff,<br><br>   v.<br><br>EQUIFAX INFORMATION SERVICES LLC,<br><br>   Defendant. | Case No. 5:25-cv-00071-BO-KS<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56** |

Defendant, Equifax Information Services LLC, hereby files its Reply in Support of its Motion for Summary Judgment.

## I.      Plaintiff's Opposition Omits Material Facts

Plaintiff argues that Equifax's Motion for Summary Judgment should be denied "because its own corporate testimony establishes that it did not perform the reinvestigation required by § 1681i" and "Equifax's entire defense depends on substituting furnisher verification for CRA reinvestigation," but Equifax's reinvestigation process consists of "merely forwarding a dispute through ACDV." (Opp. at 3-4.)  This is false.

It is <u>undisputed</u> that Equifax maintains an Independent Dispute Investigation Update Documents Standard, which governs when it will use consumer-submitted documents to make immediate updates to a consumer's credit file. *See* Equifax's Statement of Material Fact ("SMF") 9. And Equifax's representative repeatedly testified that Equifax sends an ACDV to the data furnisher with any consumer-submitted documentation "***if*** that documentation is not something that Equifax is able to review and use to act independently." (Stephens Depo. 27:2-10 (emphasis added); *see also id*. 92:5-10 (Equifax agent processing dispute will "have to review it determine

whether or not it actually will mee the criteria associated with an independent investigation"), 100:5-8 (the documents provided by Plaintiff "did not meet [Equifax's] policy requirement that would allow an independent change based upon those documents alone").

Equifax's corporate representative <u>also</u> testified that, after ACDVs are returned, Equifax "will review the response from the ACDV, they will review the system to see if there's any information that may have appeared from the data furnisher through electronic communication, and they may review to see if there's any additional information that the consumer provided in the interim." (*Id*. 42:2-10.) And Equifax maintains policies under which it will, in certain circumstances, "reject[] or overrid[e] the data furnisher's ACDV response." *See* SMF-15. And, yet, Plaintiff fails to mention <u>any</u> of this, and simply asserts that Equifax engaged in "parroting." (Opp. at 4.)

Equifax's procedures are *designed* for accuracy. SMF-4. Indeed, Equifax's policies for handling consumer disputes specifically define a reinvestigation as a "reasonable investigation into a dispute to determine whether the disputed information is inaccurate or incomplete," and, additionally, it "is Equifax's intent to ensure data accuracy on a consumer's file. Equifax will suppress, or update any information that is found to be inaccurate, incomplete or unverifiable." (*See* Second Gobin Decl. ¶¶ and Exh. M thereto, at pp. 2,3) (Docs. 101-1, 101-2.).[1]

Plaintiff simply believes that Equifax should have sided with him in his dispute over the validity of the debt Hunter Warfield was seeking to collect on behalf of Metro University apartments. But his belief does <u>not</u> make Equifax's reinvestigation unreasonable, nor does it render his claim of inaccuracy cognizable under the FCRA.

---

[1] To the extent the Equifax 30(b)(6) deponent's testimony suggested otherwise, "Rule 30(b)(6) testimony also is not binding against [an] organization in the sense that the testimony can be corrected, explained and supplemented[.]" *Schuyler Line*, 2023 WL 6592143, at *7 n.3.

326294253v.1

## II.     Plaintiff's Claimed Inaccuracy Is Not Cognizable

Plaintiff improperly attempts to reframe his dispute and the facts of this case. He argues that "he told Equifax he never signed a lease." (Opp. at 6.) But it is <u>undisputed</u> that his rental application included an "Application Agreement." *See* SMF-21. This was, itself, a contract. He argues that he told Equifax that he "never moved into the apartment," but it is <u>undisputed</u> that the Application Agreement included a term under which he could still owe the apartment complex money. *See id*. No. 22. And he argues that he told Equifax he "owed Metro University City nothing." But it is <u>undisputed</u> that Metro University City was *actually trying to collect* approximately $300.00 from him. *See* Plaintiff's Statement of Material Fact No. 5.

Plaintiff disclaims a "collateral attack," but that was exactly what his dispute consisted of. That there was a legal dispute is unquestionable. Although the fields for Application Fee and Application Deposit in the Application Agreement form contract were blank, they were not crossed out, filled with an N/A or a $0.00, or marked with any other similar notation that would clearly indicate the intention of the parties. Plaintiff even acknowledged that he actually paid a $100.00 Application Fee ***even though the field for that fee in the Application Agreement form contract was blank***. Mousselli Depo. 38:3-13 (filed at Doc. 87-2 as Exh. 2 to Plaintiff's Motion for Summary Judgment). Further, a contemporaneous welcome letter from Metro University City apartments clearly listed both a $100.00 Application Fee and a $200.00 Administrative Fee. Mousselli Depo. 66:12-69:20; *see also* Exh. E thereto, at p. 2 (Doc. 87-2, at 317).

Simply put, Plaintiff's disputes to Equifax were not premised upon a claim of factual inaccuracy, but, instead, his desire that Equifax evaluate the terms of the Application Agreement, and accept his interpretation that he owed nothing. This is precisely the type of legal "analysis of the sort that courts would typically perform" that the Fourth Circuit stated in *Roberts v. Carter-*

326294253v.1

*Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025), would not sustain a cognizable claim of inaccuracy. Contrary to Plaintiff's claim that this is a "debt never occurred" case of the type contemplated by *Roberts*, here Plaintiff acknowledged that he actually paid a $100.00 Application Fee ***even though the field was blank***. And, yet, somehow, he wanted Equifax to conclude that because the space for Application *Deposit* in the form contract was also blank, *that* fee wasn't owed.

Plaintiff argues that "Equifax does not need to interpret the rental application" because "a blank fee provision requires no legal sophistication." (Opp. at 8.) But North Carolina courts have observed that "[f]orm contracts present problems because frequently they contain terms that are not pertinent to the agreement at hand" and "[o]ften these undesired terms are marked out to indicate that they are not to be included as a part of the agreement." *Cline v. Seagle*, 27 N.C.App. 200, 201, 218 S.E.2d 480, 481 (1975). However, "[w]here a blank in a contract is not filled and not marked out, whether it is rejected as surplusage or omissions are supplied, depends upon the intention of the parties. This intention may be inferred from the contract if it appears with certainty; if not, the intention must be determined from evidence of the transaction and its details." *Id*. at 202, 482 (emphasis added).

Thus, under North Carolina law, where Plaintiff paid a fee even though the space in the form contract was blank, the meeting of the minds may have included that fee. This, in turn, suggests that the meeting of the minds between Plaintiff and Metro University City included his payment of the Application Deposit as well, and its forfeiture if he did not sign the lease. Certainly Metro University City acted as though the meeting of the minds included both terms. As noted, a contemporaneous welcome letter from Metro University City apartments clearly listed both a $100.00 Application Fee and a $200.00 Administrative Fee.

Sorting through this legal dispute is a job for a court. It is not the job of a consumer reporting agency ("CRA"). One of the cases cited by Plaintiff's Opposition highlights this: in *Brutus v. Yes Companies Fred, LLC*, 754 F.Supp.3d 1161, 1164-65 (N.D. Fla. 2024), the Court determined that a CRA could have determined if a debt sent to collections by an apartment complex included duplicated charges where the consumer "provided the Statement of Deposit [from the apartment complex] showing the duplicated charges." However, the court determined that the CRA was <u>not</u> required to determine if the apartment complex "acted pursuant to the repair allocation provision in the lease" in order to "determine the legal validity of the full debt against Plaintiff." *Id*.

In short, the consumer in *Brutus* provided the CRA with a document from the apartment complex demonstrating that some of the debt sought to be collected was factually inaccurate. Only *that* part of the dispute was cognizable. The rest of the dispute, whether the complex had acted pursuant to the contract in assessing damage charges, was *not*. Here, Plaintiff *could have* done something similar. But he didn't. Plaintiff had in his possession an email from Metro University stating that he would be refunded for the $100.00 security deposit fee he had been charged, but at his deposition he admitted he did <u>not</u> send that email to Hunter Warfield even though the $100.00 that should have been refunded was part of the $300.00 Metro University City was seeking to collect. Mousselli Depo. 125:6-127:19 & Exhs F, J thereto (filed at Doc. 87-2 as Exh. 2 to Plaintiff's Motion for Summary Judgment). Plaintiff also admitted that he did <u>not</u> send the email to Equifax. *Id.* 187:23-188:16. Had Plaintiff provided *that* email and made *that* dispute to Equifax, he might have presented a cognizable inaccuracy. He did neither.[2] Instead, he asked Equifax to

---

[2] Because Plaintiff never raised with Equifax the issue of the $100.00 security deposit that should have been refunded being included in the ~$300.00 Metro University City was seeking to collect, he cannot point to it now in this litigation. *See Petty v. Equifax Info. Servs., LLC*, No. 10-cv-694,

326294253v.1

determine that the entire amount was invalid under the Application Agreement. *That's* contract law.

Finally, Plaintiff's argument that Equifax be estopped from arguing his claim of inaccuracy is non-cognizable because its dispute agent did not "determine that the issue was not objectively and readily verifiable" is without merit. As the Fourth Circuit made clear in *Roberts*—a case decided at the Rule 12 stage—it is a *plaintiff's burden* to establish a cognizable claim of inaccuracy. *Roberts*, F.4th at 252. When a consumer's dispute turns on questions that are the province of a court of law, they cannot "establish an element of a prima facie reinvestigation claim—inaccuracy." *Carvalho v. Equifax Info. Servs. LLC*, 629 F.3d 876, 892 (9th Cir. 2010). Equifax does not have to show that its non-lawyer agents decided that Plaintiff's dispute was not objectively and readily verifiable. Whether Plaintiff's dispute met that legal standard is a question of law reserved for this Court.

### III.    Equifax's Reinvestigations Were Reasonable

Plaintiff claims that the increasing balance on the Hunter Warfield collection calls into question Equifax's reinvestigations. (Opp. at 9.)  But Plaintiff's disputes did <u>not</u> reference the increases, and his own testimony explains them. *See* Mousselli Depo. 221:9-222:25 & Exh. L to deposition (Doc. 87-2, at p. 332) ("Because of interest at the rate of 10.00%, the amount due on the day you pay may be greater."); *see also id.* 123:15-126:21. Further, these slight increases in the balance are not inconsistent with accuracy or industry standards. Credit reporting is governed by Consumer Data Industry Association's Credit Reporting Resource Guide ("CRRG"), which contains extensive criteria to ensure the accuracy and integrity of credit reporting data submitted

---

2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010) ("[I]f a consumer later sues a CRA for a violation of its reinvestigation duty under § 1681i(a), he or she may only sue based on alleged violations of which the consumer provided notice to the CRA.").

326294253v.1

by data furnishers. (First Goblin Decl. ¶ 58.) (Doc. 84-1 ¶ 58.) Among other things, the CRRG's general reporting requirements for third party collection agencies require that collection agencies "[r]eport the complete name, address, social security number and date of birth for the legally liable consumer[]" and also specify the reported current balance and amount past due, which "may include fees and interest, depending on state and federal laws." (*Id*. ¶ 59 & Exhibit H thereto, at pp. 1, 6).

Plaintiff also claims that Equifax "could not explain where the original balance came from." (Opp. at 9.)  It is not clear what Plaintiff means by this, but it is undisputed that Equifax contacted data furnisher Hunter Warfield on three separate occasions via the ACDV process, and, each time, Hunter Warfield verified that the collection was for Plaintiff and that the account should report as an unpaid collection in the amount of approximately $300.00 on behalf of Metro University City. *See* SMF-30, 41, 50 (Doc. 85 ¶¶ 30, 41, 50). Plaintiff's list of "circumstances," (Opp. 10-11), for why the ACDV process was unreasonable essentially boil down to his dispute about the validity of the debt and the fact that Equifax did not rely on his documents to remove the Hunter Warfield collection without further reinvestigation.

Indeed, Equifax's use of the ACDV process here was reasonable as a matter of law. Plaintiff acknowledges the cases cited by Equifax finding the use of the ACDV process reasonable. (Opp. at 10.)  In response, Plaintiff cites only a single case, *Losch v. Nationstar Mortgage LLC*, 995 F.3d 937 (11th Cir. 2021). In that case, which involved a mortgage that had been discharged in bankruptcy but was still reporting with a balance, the Eleventh Circuit held that the CRA's use of the ACDV process was not reasonable as a matter of law where it could have done "something" more, "for instance, by reviewing the bankruptcy docket." *Id*. at 946. Plaintiff does not, however, provide any argument of what "something" more Equifax should have done in his dispute. *Accord*

326294253v.1

*Dulworth v. Experian Info. Sols., Inc.*, No. 22-cv-469, 2024 WL 2319958, at \*16 (S.D. Ind. May 22, 2024) (granting Equifax summary judgment where "Equifax … sent ACDVs to Ally to reinvestigate the status of the Ally Loan …. and tellingly, the Dulworths do not suggest what more Equifax could have done").

**IV.     Equifax Is Entitled To Summary Judgment On Willfulness**

Plaintiff argues that Equifax is not entitled to summary judgement on willfulness, claiming that Equifax's "Rule 30(b)(6) witness testified that Equifax does not determine whether disputed information is accurate or inaccurate" which Plaintiff claims is a "policy-level admission." (Opp. at 11.) But, again, Equifax's procedures are specifically *designed* for accuracy. SMF-4.  Equifax's policies for handling consumer disputes specifically define a reinvestigation as a "reasonable investigation into a dispute to determine whether the disputed information is inaccurate or incomplete," and, additionally, it "is Equifax's intent to ensure data accuracy on a consumer's file. Equifax will suppress, or update any information that is found to be inaccurate, incomplete or unverifiable." (Second Gobin Decl.  ¶¶ 12-13 & Exh. M thereto, at pp. 2, 3) (Docs. 101-1, 101-2). To the extent the Equifax 30(b)(6) deponent's testimony suggested otherwise, "Rule 30(b)(6) testimony also is not binding against [an] organization in the sense that the testimony can be corrected, explained and supplemented[.]" *Schuyler Line Navigation Co., LLC v. Fluor AMEC II, LLC*, No. 22-cv-4195, 2023 WL 6592143, at \*7 n.3 (D.S.C. Oct. 10, 2023) (quoting 7 James Wm. Moore, et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016)).

Moreover, Plaintiff's Opposition makes no effort at all to address the cases cited by Equifax's Motion holding that, even in circumstances where the reasonableness of the ACDV process is a jury question, a CRA should be granted summary judgment on the issue of whether it

326294253v.1

"willfully" violated the FCRA where it sent ACDVs to the data furnisher. *See* Doc. 84 at pp. 23-24 (collecting cases); *see also* Doc. 101 at pp. 12-14 (collecting additional cases).

## V. Plaintiff Has No Admissible Evidence For His § 1681e(b) Claim

In its Motion for Summary Judgment, Equifax contended that a letter Plaintiff received from Capital One is inadmissible hearsay and Plaintiff has no evidence to support his § 1681e(b) claim. (Doc. 84, at 25-26.) Plaintiff makes two arguments. First, Plaintiff argues that the Capital One letter "may be admissible for non-hearsay purposes, through a proper custodian, through business record foundation, or in conjunction with testimony and other evidence." (Opp. at 12.) But Plaintiff makes no further argument. If Plaintiff wants the Capital One letter to be considered at summary judgment, he has to *explain how* it will be admissible at trial. He has failed to do so.

Second, Plaintiff argues that other evidence will suffice to establish the contents of an Equifax consumer report: "Equifax's own dispute results, credit file disclosures, inquiry/reporting evidence … and testimony concerning the account's presence on Plaintiff's Equifax credit file." (*Id*.)  Plaintiff's argument is that because the collection was on his credit file and because Capital One made *some* sort of inquiry to his credit file, the jury will be able to *infer* that Equifax published the collection to Capital One. At summary judgment, the nonmoving party must provide more than "mere speculation or the building of one inference upon another" to avoid dismissal. *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008).  Plaintiff has not.

## VI. Plaintiff's State Law Claim Fails; Plaintiff's Motion For Summary Judgment Should Be Denied

Plaintiff makes cursory arguments in support of his state law claim and his own summary judgment motion. (Opp. at 12-13.)  But, for the reasons set forth in Equifax's Motion and Response in Opposition to Plaintiff's Motion, it is Equifax—not Plaintiff—who merits summary judgment.

326294253v.1

DATED:  June 5, 2026

Respectfully submitted,

SEYFARTH SHAW LLP


By:  */s/ Vincent Smolczynski*
    Vincent Smolczynski, NC Bar No. 59715
    vsmolczynski@seyfarth.com
    SEYFARTH SHAW LLP
    300 S. Tryon Street, Suite 400
    Charlotte, NC 28202
    Telephone: (704) 925-6060
    Facsimile: (704) 946-6083

*Counsel for Defendant*
*Equifax Information Services LLC*

## <u>LOCAL RULE 7.2(F) CERTIFICATE</u>

I hereby certify on June 5, 2026, that the foregoing DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 contains 2,795 words and is compliant with Local Rule 7.2(f).

*/s/ Vincent Smolczynski*
Vincent Smolczynski
*Counsel for Defendant*
*Equifax Information Services LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 5, 2026, I presented the foregoing DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Vincent Smolczynski*
Vincent Smolczynski
*Counsel for Defendant*
*Equifax Information Services LLC*

326294253v.1