IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| YAMIN MOUSSELLI,<br><br>     Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION<br>SERVICES LLC,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No.<br>)  5:25-cv-00071-BO-KS<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**SUMMARY OF ARGUMENT**

Equifax's Opposition confirms, rather than rebuts, Plaintiff's entitlement to summary judgment on liability. Equifax does not dispute the dispositive facts: that Plaintiff disputed the ever-increasing $300+ alleged debt Equifax reported as owed to its furnisher; that Equifax's reinvestigation consisted of nothing more than transmitting an ACDV to the furnisher and "parroting" whatever response came back; and that Equifax's own Rule 30(b)(6) designee admitted under oath that ███████████████████████████████████████████ ████████████. The Court should grant Plaintiff's motion for at least four reasons.

First, Equifax's own Rule 30(b)(6) witness admitted ██████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████.

Second, Equifax attempts to manufacture a fact dispute by submitting, for the first time in litigation, documents it admits it never reviewed during its reinvestigation.

Third, Equifax recasts a verifiable factual question—whether Plaintiff owed the reported debt—as a "legal dispute" it may ignore. Equifax lost this argument at the motion to dismiss because *Roberts v. Carter-Young*, 131 F.4th 241 (4th Cir. 2025), holds the opposite. Equifax admittedly ███████████████████████████████████████████████████████████. Asked how Equifax could claim the information was accurate, Equifax says the reporting was accurate because somebody might have wanted to charge something. That's it.

Fourth, Equifax conflates the willful-versus-negligent inquiry with liability. Plaintiff's motion seeks liability only and expressly reserves willfulness for trial.

## ARGUMENT

**I.      Equifax's Own Binding 30(b)(6) Testimony Forecloses Its "We Do More Than Parrot" Defense.**

Equifax argues it does more than mechanically "parrot" furnisher responses. Its own corporate testimony says otherwise. Equifax's Rule 30(b)(6) designee, Mr. Stephens, repeatedly admitted that ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████. It therefore never determined whether the information was inaccurate, incomplete, or incapable of verification. Yet instead of deleting the account, Equifax continued reporting it and repeatedly claimed it had been "verified."

Equifax cannot create a factual dispute by repudiating the testimony of its own designated corporate representative. Equifax selected Mr. Stephens to testify on its behalf, prepared him, designated him under Rule 30(b)(6), and produced him as the corporate voice of Equifax. Having received unfavorable testimony, Equifax cannot now manufacture a factual dispute through a declaration that contradicts the very witness it chose to speak for it. As the Fourth Circuit explained in *Rohrbough v. Wyeth Labs., Inc.*:

> 'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' **A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct**.

916 F.2d 970, 975 (4th Cir. 1990) (emphasis added) (internal citation omitted).

The belated Gobin declaration, offered to recharacterize Equifax's procedures after Mr. Stephens's damaging concessions, is precisely the kind of sham submission courts disregard. Mr. Stephens's testimony was entirely consistent with the record: Equifax forwarded Plaintiff's disputes to Hunter Warfield, received a response, and adopted whatever its data furnisher said. The undisputed record—Equifax's own words—shows the reinvestigation consisted of transmitting an ACDV and accepting the response, which as a matter of law is not the reasonable, independent reinvestigation Section 1681i demands.

**II. Equifax's New Extrinsic Evidence Proves That a Reasonable Reinvestigation Would Have Uncovered the Inaccuracy.**

Equifax now submits documents it never reviewed during its reinvestigation—a welcome letter itemizing a $100 application fee and a $200 administrative fee, and a "Rental Qualifications" document—arguing they show the debt was owed. This submission backfires for two independent reasons.

First, the reasonableness of a reinvestigation is measured by what the agency did at the time, not by litigation-generated materials assembled after suit. *See Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1069–70. Post-hoc evidence cannot retroactively render an admitted cursory reinvestigation "reasonable."

Second, the very existence of these readily available documents establishes the opposite of what Equifax intends. If a $100 application fee and a $200 administrative fee were the charges

actually documented, then the ever-increasing reported balances of $308, $313, and $315 were inaccurate—or at minimum incomplete and misleading—and a reasonable inquiry would have surfaced that discrepancy. Equifax attempts to deflect by citing the CDIA's collection agency reporting standards. The CDIA is a trade group for the credit reporting industry. It does not set the standard for accuracy. Equifax presents no evidence explaining the increasing balances. It cannot identify the contractual provision supporting them, who calculated them, or any factual basis for them. Yet Equifax repeatedly verified them as accurate and complete. An agency cannot defend the reasonableness of an investigation that never occurred by pointing to evidence it never examined.

**III.    Whether Mr. Mousselli Owed the Reported Debt Is an "Objectively and Readily Verifiable" Fact That Equifax Was Required to Reinvestigate—Not a "Legal Dispute" It May Ignore.**

Equifax's lead argument is that Plaintiff's dispute is an off-limits "legal" question—a "collateral attack" on the validity of the debt that a consumer reporting agency has no duty to reinvestigate. Equifax lost this argument on its motion to dismiss. *See* ECF Nos. 11, 77. It is foreclosed by *Roberts v. Carter-Young, Inc.*, 131 F.4th 241 (4th Cir. 2025), which squarely "decline[d] to follow" any rule that legal disputes fall categorically outside the FCRA's reinvestigation duty, holding that "both legal and factual disputes can form the basis of a[n FCRA] claim, so long as they are objectively and readily verifiable." *Roberts*, 131 F.4th at 252. "There is no hard line rendering legal disputes unverifiable under this standard." *Id.* at 245. The dispositive question is therefore not whether Plaintiff's dispute can be labeled "legal," but whether the claimed inaccuracy is "objectively and readily verifiable."

Under that standard, whether Plaintiff owed the reported $300+ is exactly the kind of fact the FCRA requires Equifax to verify. *Roberts* holds that the scope of verifiable disputes is "not

limited to confirming accurate transcription of a debt's amount or the name of the debtor," and expressly recognizes that "[w]hether a debt has been paid could, in some instances, be objectively and readily verifiable," as could "claims that alleged debts never occurred." *Id.* at 251-52. Plaintiff's dispute is precisely that. It is not a "dispute that involves complex fact-gathering and in-depth legal analysis," nor one "that implicates unsettled questions of law." *Id.* at 251. Mr. Mousselli never had any debt. Equifax's effort to recast a verifiable debt-existence question as a judicial "legal" determination is exactly the categorical dodge *Roberts* rejects.

Equifax's legal-dispute theory is a litigation position, not a reinvestigation determination. Equifax admits ████████████████████████████████████████████ ██████████████████████████. Equifax's dispute agents are not lawyers, did not classify Plaintiff's dispute as legally unverifiable, and instead processed the disputes through Equifax's ordinary ACDV procedures. Having never treated Plaintiff's dispute as non-cognizable during the reinvestigation itself, Equifax cannot now avoid liability through a post-hoc litigation characterization.

Once the dispute is properly understood as verifiable, this Court's decision in *Myrick v. Equifax Information Services, LLC*, 2017 U.S. Dist. LEXIS 122726 (E.D.N.C. Aug. 3, 2017)[1] controls the reasonableness inquiry—and defeats Equifax on materially identical facts. In *Myrick*, Equifax responded to a consumer's dispute by "sen[ding] an [ACDV] to [the furnisher]" and accepting the furnisher's confirmation, without taking any independent step to verify the disputed information. This Court held that "Equifax limiting its reinvestigation to contacting [the furnisher]

---

[1] On the plaintiff's motion for reconsideration in *Myrick*, the Court reversed its decision to grant summary in Equifax's favor. *See Myrick v. Equifax Info. Servs.*, LLC, 2017 U.S. Dist. LEXIS 175756, *11 (E.D.N.C., Oct. 23, 2017) ("Upon reconsideration of Equifax's motion for summary judgment, the court DENIES summary judgment as to plaintiff's claim for willful violation of 15 U.S.C. § 1681i(a), as well as his request for economic damages.") (emphasis in original).

with an ACDV regarding the disputed entry might have been negligent," and that "there is a genuine issue of material fact concerning whether Equifax should have taken steps to independently verify the information provided by [the furnisher]." *Myrick*, 2017 U.S. Dist. LEXIS at 20-21.

Parroting is illegal. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3rd Cir. 1997) ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources."). Beyond *Myrick*, Equifax has been repeatedly warned about the inadequacy of its ACDV and parroting practices. *See, e.g.*, *Huizar v. Equifax Info. Servs. LLC*, 2025 U.S. Dist. LEXIS 224769, at *31 (N.D. Ind. Nov. 14, 2025) ("A reasonable juror could conclude that Equifax's reflexive reliance on the ACDV process is precisely the type of 'cursory investigation' that has been deemed impermissible by the Seventh Circuit) (internal citation omitted); *Paulino v. Western Funding II Inc.*, 737 F. Supp. 3d 1338, 1343-47 (S.D. Fla. 2024) (denying motion for judgment on the pleadings on the issue of whether Equifax conducted a reasonable investigation where all it did was rely on the ACDV process). When a consumer alerts a CRA of a potential inaccuracy with more than a generic dispute asserting unspecified disagreement, the ACDV process alone is not a reasonable reinvestigation.

Read together, this Court's prior Order denying Equifax's motion to dismiss, *Roberts* and *Myrick* leave Equifax no refuge. *Myrick* arose in the more difficult posture of a bankruptcy-discharge dispute—yet this Court held ACDV-only reliance could be negligent. *Id* at 20-21. Plaintiff's dispute is cleaner: it turns on whether a debt was actually incurred, the typical "objectively and readily verifiable" fact under *Roberts*. A consumer reporting agency has an independent obligation to conduct its own investigation—particularly important here because it is the data furnisher that was the original source of the inaccurate information. On this record, where

Equifax's own corporate designee admitted ████████████████████████ ██████, the violation is established as a matter of law.

Mr. Mousselli specifically told Equifax that nothing was owed. Equifax creates a strawman by pointing out that he had already paid an application fee (paid prior to any application) to claim a conflict with his statements. No conflict exists. It does not take a lawyer or even a sophisticated person to recognize that a blank line means nothing is owed. Equifax's self-serving speculation that terms may have been "left out" of the rental application has no basis in fact or law. There simply is no evidence supporting Equifax's claim—that maybe there was some amount. Even if there were, Equifax wholly fails to explain how the amount could have increased multiple times. Equifax wants this Court to accept that it should be immune from liability because it is possible that someone wanted to charge something. That is not a defense.

*Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142 (4th Cir. 2008), reinforces this conclusion. The Fourth Circuit held that a report may be "inaccurate" or "misleading" where it fails to reflect a *bona fide* dispute, because a meritorious dispute bears directly on whether nonpayment reflects the consumer's irresponsibility. *Saunders*, 526 F.3d at 148–50. Equifax did neither: it neither determined inaccuracy nor recorded the dispute it could not resolve. The third *Myrick* element—whether "a reasonable reinvestigation could have uncovered the inaccuracy"— is satisfied on Equifax's own submission: the welcome letter and rental-qualifications documents Equifax produced confirm that the readily available records would have revealed, at a minimum, a discrepancy had Equifax looked. *See Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1336 (11th Cir. 2015) ("[t]aking no steps other than contacting only [the furnisher] with an ACDV form regarding the disputed entry might have been negligent"). Because Plaintiff's dispute is objectively and readily verifiable under *Roberts*, and because *Myrick* holds that Equifax's ACDV-only

reinvestigation of such a dispute is not reasonable as a matter of law, Equifax's "legal dispute" defense fails.

**IV. Equifax's Willfulness Arguments Are Irrelevant to This Liability-Only Motion.**

Much of Equifax's Opposition is devoted to arguing that any violation was not "willful" under Section 1681n and that its reading of the statute was objectively reasonable under *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007). That argument misapprehends the relief Plaintiff seeks. Plaintiff's motion seeks partial summary judgment on *liability only*—that Equifax negligently violated Section 1681i(a) by failing to conduct a reasonable reinvestigation. Plaintiff expressly reserves the questions of willfulness, statutory and punitive damages under Section 1681n, and the amount of actual damages under Section 1681o for trial.

Because negligent noncompliance alone establishes liability under Section 1681o, Equifax's *Safeco* willfulness defense provides no basis to deny the motion. Whether Equifax's conduct was merely negligent or also willful is a separate, reserved question that does not bear on the threshold liability finding Plaintiff seeks here.

Even if the Court were to consider Equifax's willfulness argument, recent authority has recognized that a jury may find reckless disregard where a CRA relies reflexively on ACDV responses after being placed on notice of potential inaccuracies. *See Huizar*, 2025 U.S. Dist. LEXIS 224769, *48-49 (where Equifax relied on the ACDV process, a "jury must first decide whether Equifax's procedures to ensure maximum possible accuracy and reinvestigations were reasonable, and, if not, whether they were undertaken with reckless disregard of the FCRA's requirements."). That evidence creates a triable issue for the jury—and demonstrates why Equifax is not entitled to summary judgment and Plaintiff is.

**V.     The Consumer-Statement Provisions of Section 1681i(b) and (c) Do Not Excuse Equifax's Independent Duty to Delete Inaccurate Information.**

Equifax suggests that Plaintiff's remedy was to file a consumer statement under Section 1681i(b) and (c). That is a red herring. The optional right of a consumer to add a brief statement of dispute does not displace the agency's mandatory, independent duty under Sections 1681i(a)(1) and (a)(5) to reinvestigate and to delete information that is inaccurate, incomplete, or unverifiable. Nothing in the statute makes the consumer-statement mechanism a substitute for, or a precondition to, the agency's deletion obligation. Equifax cannot offload its statutory reinvestigation duty onto the consumer.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiff's opening memorandum, Plaintiff respectfully requests that the Court grant his Motion for Partial Summary Judgment as to Equifax's liability under 15 U.S.C. § 1681i(a), with the questions of willfulness and damages reserved for trial.

/s/ Rashad Blossom
Rashad Blossom (NC Bar No. 45621)
BLOSSOM LAW PLLC
126 N. McDowell Street, 2nd Floor
Charlotte, North Carolina 28204
Telephone: (704) 256-7766
rblossom@blossomlaw.com

Duran L. Keller (specially appearing)
KELLER LAW LLP
8 N. Third Street, Suite 403
Lafayette, Indiana 47901
Telephone: (765) 444-9202
duran@kellerlawllp.com

Counsel for Plaintiff Yamin Mousselli

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.2(f)**

Pursuant to Local Civil Rule 7.2(f)(3) of the United States District Court for the Eastern District of North Carolina, the undersigned certifies that the foregoing Plaintiff's Reply in Support of Motion for Partial Summary Judgment contains approximately 2,368 words, excluding the case caption, signature blocks, and this certificate, as counted by the word-processing system used to prepare the brief, and therefore complies with the 2,800-word limit applicable to reply briefs.

/s/ Rashad Blossom
Rashad Blossom

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 5, 2026, the foregoing was served via email on counsel of record via CM/ECF.

/s/ Rashad Blossom
Rashad Blossom